1

2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

3

**LUISA M. RODRÍGUEZ-CRUZ**

4

**Plaintiff,**

5

**v.**                                              **CIVIL NO. 14-1534 (GAG)**

6

**STEWART TITLE PUERTO RICO, INC.,**

7

**et al.,**

8

**Defendants.**

9

10

### OPINION AND ORDER

11

Luisa M. Rodríguez-Cruz ("Plaintiff") brings this employment discrimination action

12

against Defendants Stewart Title Puerto Rico, Inc. ("STPR"), Stewart Title Guaranty Company

13

("STGC"), Stewart Title Company ("STC"), Stewart Information Services Corporation

14

("SISCO"), and Maritza Quezada ("Quezada") (collectively "Defendants").  (Docket No. 21 ¶¶ 18-

15

25.)  Plaintiff claims Defendants discriminated against her because of her age in violation of the

16

Age Discrimination in Employment Act, 29 U.S.C. §§ 621-623 ("ADEA"); Title VII of the Civil

17

Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); and 42 U.S.C. § 1983.  Id. ¶¶ 2, 4, 6, 7.

18

Plaintiff also invokes the Court's supplemental jurisdiction to bring various claims under Puerto

19

Rico Law.[1]  Id. ¶¶ 2, 7, 15.

20

21

_____

22

[1] Plaintiff asserts claims under Puerto Rico Law No. 100 of 1959, P.R. LAWS ANN. tit. 29, §§ 146-151 *et seq.*

23

("Law 100"); Puerto Rico Law No. 115 of 1991, P.R. LAWS ANN. tit. 29, § 194a ("Law 115"); Puerto Rico Law No.
379 of 1948, P.R. LAWS ANN. tit. 29, §§ 271-288 *et seq.* ("Law 379"); Puerto Rico Law No. 80 of 1931, P.R. LAWS
ANN. tit. 29, §§ 289-90 *et seq.* ("Law 80"); Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit.

24

31, § 5141, 5142 ("Article 1802 and 1803") and Article II, §§ 1, 4, 6, 7, 8, and 16 of the Constitution of the
Commonwealth of Puerto Rico.  Id. ¶¶ 2, 7.

Civil No. 14-1534 (GAG)

Presently before the Court is Defendants' Motion for Summary Judgment and all subsequent responses thereto.  (Docket Nos. 122; 144; 161; 171.)

Plaintiff asserts ADEA age discrimination based on two events: (i) Plaintiff's demotion to a Policy Specialist in March 2013 ("2013 demotion") and (ii) Plaintiff's October 2013 termination ("2013 termination").  (See Docket No. 21 ¶¶ 76-81.)  Defendants argue the 2013 demotion was not an adverse employment action and was not related to age.  (Docket No. 122-1 at 2-3.)  Second, Defendants argue the 2013 termination claim fails because Plaintiff's was not replaced.  Id. at 3, 4.  Instead, her position was eliminated as part of an age-neutral Reduction-in-Force ("October 2013 RIF").  Id.  Defendants also argue the 2013 demotion and 2013 termination were motivated by legitimate business reasons unrelated to age.  Id.

Plaintiff alleges a hostile work environment under Title VII based on various acts by her employer.  (See Docket No. 21 ¶¶ 82-86.)  In support of summary judgment, Defendants respond that any hostile work environment claim is non-cognizable because the alleged incidents were unrelated to age and do not rise to the level protected by the ADEA and/or Title VII.  (Docket No. 122-1 at 26-31.)  Plaintiff also alleges a retaliation claim under Title VII.  (Docket No. 21 ¶¶ 82-86.)  Defendants argue any retaliation claim fails because Plaintiff did not engage in a protected activity prior to any retaliatory employment action.  (Docket No. 122-1 at 31-32.)

After considering the submissions of the parties and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment at Docket No. 122.

## I.     Preliminary Matters and Admissibility Objections

### A.  Local Rule 56(c)

First, the Court addresses preliminary objections.  In support of its motion, Defendants filed a Statement of Uncontested Material Facts, listing 182 allegedly undisputed facts.  (Docket

2

Civil No. 14-1534 (GAG)

No. 122-2.)  In response, Plaintiff filed an Opposition to Defendants' Statement of Uncontested Material Facts admitting, denying, and qualifying Defendants' version of the facts.  (Docket No. 144-1.)  However, many of Plaintiff's objections failed to support the denial or qualification with a record citation as required by Local Rule 56(c).  Additionally, while certainly not mandatory, Plaintiff elected not to provide a separate section of additional facts in her response to Defendants' Statement of Uncontested Material Facts, as permitted by Local Rule 56(c).  Instead, Plaintiff's Response in Opposition to Defendants' Statement of Uncontested Material Facts relies primarily on admissibility objections to Defendants' evidence—and not on properly cited assertions of fact.[2]

### B.  Sham Affidavit

Defendants' Statement of Uncontested Material Facts relies on a Quezada affidavit for factual support.  (See Docket No. 122-8.)  Plaintiff objects.  (See Docket No. 144-1 at 5-10.)  Plaintiff contends the affidavit is a self-serving post summary judgment affidavit because it was given after the discovery period, executed the same day Defendants filed their motion, and contains facts contradicting Quezada's deposition testimony.  Id.  Plaintiff requests the Court strike all facts supported by Quezada's affidavit.  Id. at 10.

The sham affidavit doctrine prohibits a party from contesting summary judgment on the basis of an affidavit contradicting prior testimony solely for the purpose of creating an issue of fact.  See Escribano-Reyes v. Prof'l Hepa Certifícate Corp., 817 F.3d 380, 387 (1st Cir. 2016) (affirming the district court's decision to strike a post summary judgment affidavit and impose sanctions).  However, the sham affidavit doctrine does not prohibit a party from elaborating,

---

[2] Plaintiff's counsel employed the same tactics in another contemporaneous case against Defendants before this Court.  See Pérez-Maspons v. Stewart Title P.R., Inc., No 14-1636 (GAG), --- F. Supp. 3d ----, (D.P.R. Sept. 16, 2016) (Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment).

3

**Civil No. 14-1534 (GAG)**

clarifying, or explaining prior deposition testimony.  Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002) ("[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment.").  Courts must consider even a clearly self-serving affidavit in resolving summary judgment motions.  Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 204 (D.P.R. 2013).

The Court finds Quezada's affidavit explains and elaborates on inconclusive answers given at the deposition.  See Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000) (subsequent revised testimony due to lapse of memory and new sources of information did not constitute a contradiction warranting striking an affidavit).  Notably, Plaintiff has not identified any factual basis to show Quezada's affidavit contradicts her deposition testimony.  Therefore, the Court deems the following facts from Defendants' Statement of Undisputed Material Fact as properly supported by the record: ¶¶ 1-2, 8-9, 11, 13-15, 23, 29-31, 33-39, 41-42, 45-48, 52-53, 57, 63-71, 81-82, 87, 94-102, 104-111, 127, 140, 144, 154, 156-165, 167, 171-174.  (See Docket No. 122-2).

C.  Admissibility

Defendants' also cite to financial statements in Defendants' Statement of Uncontested Material Facts to show STPR's ailing financial condition.  (Docket Nos. 122-11; 122-12; 122-31; 122-14; 122-15.)  Plaintiff objects on authentication grounds.  (See Docket No. 144-1 ¶¶ 38, 84-87).  Specifically, Plaintiff argues Quezada lacks sufficient personal knowledge of the information contained in STPR's financial statements.  (See Docket No. 147 at 10-13.)

Under the federal rules, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible."  FED. R. CIV. P. 56(c)(2).  Rule 56(c)(2) requires "nothing more" than "an unsworn declaration under penalty of perjury" to

4

Civil No. 14-1534 (GAG)

authenticate certain business records.  Francis v. Caribbean Transp. Ltd., 882 F. Supp. 2d 275, 278-79 (D.P.R. 2012).  In her affidavit under penalty of perjury, Quezada states STPR's financial statements "are true and accurate copies of the originals that are kept under [her] custody as Vice President and General Manager of STPR."  (Docket No. 122-8 ¶ 95.)  Thus, Quezada's affidavit is sufficient to authenticate STPR's financial statements at the summary judgment stage.

Finally, Plaintiff has either failed to deny or failed to controvert, with proper citation to the record, many assertions in Defendants' Statement of Uncontested Material Facts.  (See Docket No. 144-1 ¶¶ 5, 6, 8, 9, 13-15, 23, 30-31, 34-42, 45-48, 52, 54, 57, 61, 63, 70-71, 79, 83, 88-96, 102, 108, 111, 118-119, 123, 127-128, 139-143, 145, 148-149.)  To dispute a fact, a party must support the assertion with a citation to specific material in the record.  FED. R. CIV. P. 56(c)(1).  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  L. CIV. R. (56)(e).  Therefore, Defendants' Statement of Uncontested Facts ¶¶ 5, 6, 8, 9, 13-15, 23, 30-31, 34-42, 45-48, 52, 54, 57, 61, 63, 70-71, 81-82, 87, 89, 94-111, 118, 124, 127, 134-135, 139-140, 144-145, 157-165, 167, and 171-174 are deemed admitted.

## II.    Relevant Facts and Procedural Background

Plaintiff brings suit against her former employer, challenging both her 2013 demotion and 2013 termination.  Plaintiff's employment at STPR began in 1989.  (Docket Nos. 122-2 ¶ 4; 144-1 ¶ 4.)  From 1989 until 2010, Plaintiff's job title was Executive Assistant.  (Docket Nos. 122-2 ¶ 4, 16; 144-1 ¶ 4, 16.)  At some point in 2009 or 2010, Plaintiff's title was changed to Assistant Underwriter.[3]  (Docket Nos. 122-2 ¶ 16; 144-1 ¶ 16.)  In March 2013, Plaintiff's title was changed

[3] Plaintiff clarifies, without denying, Defendants' version of this fact.  Plaintiff performed the duties of an Assistant Underwriter for some time before 2010, when her titled was changed.  (Docket No. 144-1 ¶ 16.)

5

Civil No. 14-1534 (GAG)

to Policy Specialist.[4]  (Docket Nos. 122-2 ¶ 52; 144-1 ¶ 52.)  On October 7, 2013, Plaintiff was terminated from her position as a Policy Specialist at STPR.  (Docket Nos. 122-2 ¶ 99; 144-1 ¶ 91.)  She was fifty-six (56) years old at the time.

The origins of Plaintiff's claim derive from a series of changes in corporate ownership, management, and organizational structure at Plaintiff's employer.  In 2001, Stewart Title Company ("STC") purchased fifty-one percent of San Juan Abstract Co., Inc.'s shares.  (Docket Nos. 122-2 ¶ 7; 144-1 ¶ 7.)  In 2010, STC purchased the remaining forty-nine percent of Plaintiff's employer's stock, which by that time was operating under as STPR.  (Docket Nos. 122-2 ¶ 7; 144-1 ¶ 7.)

Ownership changes also brought changes to management.  Before the initial stock purchase, Mr. Eusebio Dardet served as President of STPR until stepping down after 2001.  (Docket Nos. 122-2 ¶ 9; 144-1 ¶ 9.)  Thereafter, Mr. Pablo Dardet became President and held this role until November 2012.  (Docket Nos. 122-2 ¶ 9; 144-1 ¶ 9.)  In mid-2012, Mr. Steve Lessack ("Lessack") was appointed Chairman of STPR's Board.  (Docket Nos. 122-2 ¶ 34; 144-1 ¶ 34.)

Around the same time, Ms. Maritza Quezada ("Quezada") gained an increasing degree of control over STPR's organizational structure and day-to-day operations.  In 2005, Quezada was a Technology Integrator for STGC.  (Docket Nos. 122-2 ¶ 10; 144-1 ¶ 10.)  In 2010, Quezada became STPR's Operations Manager; where she oversaw STPR's daily operations.  (Docket Nos. 122-2 ¶ 15; 144-1 ¶ 15.)  Then, in 2013, Quezada was named Vice President and General Manager for STPR.  (Docket No. 122-2 ¶ 68; 144-1 ¶ 68.)  This title brought the added responsibility of overseeing all STPR personnel.  (Docket No. 122-2 ¶ 69; 144-1 ¶ 69.)

---

[4] Plaintiff denies the reason for the title change, while implicitly admitting the fact that her title changed. (See Docket No. 144-1 ¶ 52.)

6

Civil No. 14-1534 (GAG)

STPR's new management implemented a number of changes relating to its operational structure.  These changes fall into two broad categories: (1) changes to corporate policy aimed at streamlining procedures and increasing efficiency and (2) a reduction in force that took place on October 7, 2013 ("October 2013 RIF").[5]

Many aspects of the changes to STPR's corporate policy are undisputed.  From 2010 to 2013, insurance policyholder claims brought against STPR nearly doubled.  (Docket Nos. 122-2 ¶ 38; 144-1 ¶ 38.)  In response, Quezada sought to standardize the process by which STPR generated insurance policies.  (Docket Nos. 122-2 ¶ 30; 144-1 ¶ 30.)  Changes to the corporate organizational structure at STPR included, among other things, (i) establishing a uniform protocol for issuing insurance policies; (ii) eliminating "Assistant" positions, including the Assistant Underwriter position; (iii) limiting underwriting duties to Puerto Rico licensed attorneys; and (iv) creating the Policy Specialist position.  (Docket Nos. 122-2 ¶ 36; 144-1 ¶ 36.)  All four of these changes were implemented to reduce policy errors, thereby reducing policy claims, and ultimately making STPR more profitable.  (Docket Nos. 122-2 ¶ 39; 144-1 ¶ 39.)  For example, STPR limited underwriting duties to attorneys in March 2013 as an attempt to reduce the risk of error in policy drafting. (Docket Nos. 122-2 ¶ 39; 144-1 ¶ 39.)  Plaintiff contests the effectiveness—but not the existence— of these corporate policy changes.  (See Docket No. 144-1 ¶ 36.)

As a result of the ownership, management, and organizational changes at STPR, Plaintiff's role changed as well.  As an Assistant Underwriter, Plaintiff's duties encompassed a variety of tasks relating to receiving policy requests, document review and production, and closings.  (Docket Nos. 122-2 ¶ 18, 19; 144-1 ¶ 18, 19.)  All of these tasks were performed with a view towards

---

[5] Plaintiff purports to dispute the existence of the October 2013 RIF.  (Docket No. 144-1 ¶ 84.)  However, Plaintiff does not deny the fact that seventeen (17) STPR employees were laid off on October 7, 2013.  (Docket No. 144-1 ¶ 91.)  Therefore, the existence of the October 2013 RIF is deemed admitted.

Civil No. 14-1534 (GAG)

1   assisting STPR's Underwriters.   Occasionally, Plaintiff's responsibilities as an Assistant

2   Underwriter included client contact.  (Docket Nos. 122-2 ¶ 18; 144-1 ¶ 18.)  Plaintiff reported

3   directly to STPR's President.  (Docket Nos. 122-2 ¶ 17; 144-1 ¶ 17.)

4       In March 2013, Plaintiff was reassigned to one of STPR's newly-created Policy Specialist

5   positions.  (Docket Nos. 122-2 ¶ 52; 144-1 ¶ 52.)  Four Policy Specialist positions were created in

6   total.   (Docket Nos. 122-2 ¶ 53; 144-1 ¶ 53.)   As a Policy Specialist, Plaintiff's day-to-day

7   responsibilities largely remained the same: she received and reviewed commercial and residential

8   policy requests.  (See Docket Nos. 122-2 ¶¶ 59-61; 144-1 ¶¶ 59-61.)  Likewise, Plaintiff's salary as

9   a Policy Specialist remained the same.  (Docket Nos. 122-2 ¶ 55; 144-1 ¶ 55.)

10      However, Plaintiff's role at STPR changed in three ways as a result of the March 2013

11  demotion: (i) Plaintiff  no longer had direct client contact; (ii) Plaintiff did not attend closings; and

12  (iii) Plaintiff was reclassified as a non-exempt employee.  (Docket Nos. 122-2 ¶¶ 61, 63; 144-1 ¶¶

13  61, 63.)  As a non-exempt employee, Plaintiff was required to clock in and clock out of work every

14  day.   (Docket Nos. 122-2 ¶ 64; 144-1 ¶ 64.)   These three changes applied to all four Policy

15  Specialists.  (Docket Nos. 122-2 ¶ 67; 144-1 ¶ 67.)

16      On October 7, 2013, Plaintiff was terminated from her position as a Policy Specialist at

17  STPR.  (Docket Nos. 122-2 ¶ 99; 144-1 ¶ 91.)  On that day, a total of seventeen (17) STPR

18  employees were terminated.  (Docket Nos. 122-2 ¶ 99; 144-1 ¶ 91.)  Age was not a factor

19  considered by STPR during the October 2013 RIF.  (Docket Nos. 122-2 ¶ 100; 144-1 ¶ 91.)

20  Quezada determined that personnel reductions were a necessary cost-cutting measure in light of

21  STPR's financial status at the time.  (See Docket Nos. 122-2 ¶ 81, 82, 89; 144-1 ¶¶ 79, 85.)

22  Quezada recommended specific workforce reductions to Lessack, which Lessack then accepted

23

24

Civil No. 14-1534 (GAG)

and implemented.  (Docket Nos. 122-2 ¶¶ 87; 144-1 ¶¶ 83.)  After October 7, 2013, only fourteen (14) employees remained employed by STPR.  (Docket Nos. 122-2 ¶ 99; 144-1 ¶ 91.)

As part of the October 2013 RIF, Quezada determined that the Policy Specialist position could be eliminated, and those duties reassigned to other positions within STPR.  (Docket Nos. 122-2 ¶ 97; 144-1 ¶ 90.)  Quezada viewed the Policy Specialist position as expendable due to a decrease in the volume of policy origination requests at STPR.  (Docket Nos. 122-2 ¶ 95; 144-1 ¶ 88.)  Accordingly, Policy Specialist duties were reassigned to other, existing positions at STPR. (Docket Nos. 122-2 ¶ 96; 144-1 ¶ 89.)  Of the four Policy Specialists, Plaintiff and Ms. Norma Figueroa ("Ms. Figueroa") were terminated, while the other two employees were reassigned to other roles.  (Docket Nos. 122-2 ¶¶ 104-08; 144-1 ¶¶ 93, 94.)

Plaintiff contests the validity of the October 2013 RIF.  First, Plaintiff argues that the October 2013 RIF was merely a rouse because it was not in writing.  (Docket No. 144-1 ¶ 84.) Second, Plaintiff demonstrates some factual evidence showing the October 2013 RIF was not justified based on STPR's financial condition.  Id.  For example, Plaintiff notes a March 2013 employee bonus, corporate dividends, a December 2013 Christmas bonus and party, and attendance by STPR employees at a mortgage loan convention.  (Docket Nos. 122-2 ¶¶ 154, 157, 160, 162; 144-1 ¶¶ 136, 139, 141, 142.)

Additionally, Plaintiff draws on specific actions, comments, and events to support her age discrimination and hostile work environment claims.  Plaintiff was never subjected to any ageist remarks during the entire course of her twenty-four (24) year employment at STPR.  (Docket Nos. 122-2 ¶ 117; 144-1 ¶ 101.)  However, at some point in 2013, Lessack met with STPR employees and made a comment about "cleaning house."  As Plaintiff described it, Lessack stated: "the office was like a house and when you do a cleanup of that house, you take all the furniture out, you clean,

9

**Civil No. 14-1534 (GAG)**

you fix, you paint the house, and then you bring back into the house what works."  (Docket Nos. 122-2 ¶ 121; 144-1 ¶ 101; <u>see also</u> Docket No. 122-3 at 227.)

Following the October 2013 RIF, some employees were retained at STPR as Attorney Underwriters.  Plaintiff is not an attorney.  (Docket Nos. 122-2 ¶ 142; 144-1 ¶ 125.)  Both Ms. Ileana Corral and Mr. Roberto Segarra were retained at STPR after the October 2013 RIF. (Docket Nos. 122-2 ¶¶ 143, 144; 144-1 ¶¶ 126, 127.)  Both Ms. Corral and Mr. Segarra are attorneys licensed to practice in Puerto Rico.  (Docket Nos. 122-2 ¶¶ 143, 144; 144-1 ¶¶ 126, 127.) Ms. Corral is younger than Plaintiff; Mr. Segarra is six years older than Plaintiff.  (Docket Nos. 122-2 ¶¶ 143, 144; 144-1 ¶¶ 126, 127.)

Additionally, Plaintiff alleges that two younger, less experienced employees were retained at STPR after Plaintiff's 2013 termination.  (Docket Nos. 122-2 ¶ 135; 144-1 ¶ 119.)  Ms. Griselle Rodriguez ("Ms. Rodriguez") and Mr. Orlando Rodriguez ("Mr. Rodriguez"), who were both appointed as Policy Specialists at the same time as Plaintiff, were retained at STPR following the October 2013 RIF.   (Docket Nos. 122-2 ¶¶ 53, 135; 144-1 ¶¶ 53, 119.)   Unlike Plaintiff, Ms. Rodriguez had a license to sell insurance from the Puerto Rico Insurance Commissioner.  (Docket No. 122-2 ¶¶ 106, 107; 144-1 ¶ 93, 94.)  Mr. Rodriguez was retained as well; he returned to his previously held position.  (Docket Nos. 122-2 ¶ 108; 144-1 ¶ 94.)  Seniority was not a determining factor in Quezada's decision to terminate Plaintiff.  (Docket Nos. 122-2 ¶ 84; 144-1 ¶ 119.)

Plaintiff also claims she was subject to harassment by Quezada based on a series of events at work.  Specifically, Quezada (i) emailed Plaintiff about work duties; (ii) changed the office locks without providing Plaintiff a key; (iii) excluded Plaintiff from meetings; and (iv) once

10

Civil No. 14-1534 (GAG)

Plaintiff mistakenly thought Quezada had locked Plaintiff in the office.[6]   (Docket Nos. 122-2 ¶ 165; 144-1 ¶ 143.)   Quezada's emails were sent to all four Policy Specialists, and generally contained either work instructions or inquiries as to the duties the Policy Specialists performed. (Docket Nos. 122-2 ¶ 166; 144-1 ¶ 144.)   Quezada changed the office locks and provided the office key to two employees, but did not provide Plaintiff a key.   (Docket Nos. 122-2 ¶¶ 169, 171, 172; 144-2 ¶¶ 146, 148.)   Quezada did not include Plaintiff in three (3) or four (4) meetings. (Docket Nos. 122-2 ¶ 175; 144-1 ¶ 150.)   Finally, on one occasion, Quezada closed the office for the evening while Plaintiff was still at work.   (Docket Nos. 122-2 ¶ 180; 144-1 ¶ 152.)   Plaintiff was not, in fact, locked in the office.   (Docket Nos. 122-2 ¶ 181; 144-1 ¶ 152.)

Following her October 7, 2013 termination, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") claim alleging age discrimination.   (Docket Nos. 122-2 ¶ 113; 144-1 ¶ 97.)   This was Plaintiff's first complaint relating to age discrimination or harassment against her employer.   (Docket Nos. 122-2 ¶ 112; 144-1 ¶ 97.)

On August 31, 2015, STPR permanently closed its operations and terminated its remaining twelve employees.   (Docket Nos. 122-2 ¶ 111; 144-1 ¶ 96.)

### III.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).   "An issue

---

[6] Plaintiff responds that these four events are "the same as denied."   (Docket No. 144-1 ¶ 143.)   Then, Plaintiff essentially reiterates the same four events without citation to the record, adding "Quezada withdrew from [Plaintiff] many of the duties of her position which she had had for more than twenty five years, among others."   Id. The Court deems Defendants' Statement of Uncontested Material Fact ¶ 165 as admitted.   See L. CIV. R. 56(e) ("the court may disregard any statement of fact not supported by a specific citation to record material.").

Civil No. 14-1534 (GAG)

is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).   The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.   Celotex, 477 U.S. at 325.   "The movant must aver an absence of evidence to support the nonmoving party's case.   The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).   If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences.   Id. at 255.   The Court does not make credibility determinations or weigh the evidence.   Id.   Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Civil No. 14-1534 (GAG)

## IV.    Legal Analysis

### A.  ADEA: Age Discrimination Claim

The ADEA forbids an employer from discharging an employee because of her age. 29 U.S.C. § 623(a)(1); Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir. 2011).  To prevail on an age discrimination claim under the ADEA, an employee must show that age was the but-for cause of his or her termination by a preponderance of the evidence.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 571 (1st Cir. 2012).  Where the employee lacks direct evidence, the Court assesses circumstantial evidence of age discrimination through the McDonnell Douglas burden-shifting framework. Bonefont-Igaravidez, 659 F.3d at 123 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).

In the first stage, Plaintiff bears the burden of establishing all four elements of the *prima facie* case, namely: (1) she was at least forty years old at the time of the alleged adverse employment action; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the employer later filled the position, thereby demonstrating the continuing need for those services.  Bonefont-Igaravidez, 659 F.3d at 124 (citing Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009)).  In the second stage, the burden of production shifts back to defendant "to articulate a legitimate, nondiscriminatory basis for the termination." Cruz, 699 F.3d at 571.  Once defendant sets forth a non-discriminatory basis for the employment action, the inference raised by the *prima facie* case dissolves and the final burden transfer occurs.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991) (citing Freeman v. Package Mach. Co., 865 F.2d 1331, 1336 (1st Cir. 1988)).

Civil No. 14-1534 (GAG)

In the final stage, plaintiff must show the reason given for the discharge is "merely a pretext for impermissible age discrimination." Cruz, 699 F.3d at 571. To make a showing of pretext, plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Meléndez v. Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010) (quoting Mesnick, 950 F.2d at 824). Plaintiff must do more than dispute the legitimacy of the employer's asserted justification; he must also offer evidence "of the employer's discriminatory animus." Vega v. Kodak Caribbean, 3 F.3d 476, 479 (1st Cir. 1993) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)) ("liability under the ADEA depends upon whether age 'actually motivated the employer's decision' and [the court] [hesitates] to infer age-based animus solely 'from the implausibility of the employer's explanation.'").

Plaintiff alleges two instances of age discrimination by Defendants: (i) her March 2013 demotion and (ii) her October 2013 termination. Each event is analyzed in turn.

### 1. March 2013 Demotion

Plaintiff first alleges that Defendants unlawfully discriminated against her in violation of the ADEA when she was reassigned from an Assistant Underwriter to a Policy Specialist in March 2013. The parties agree Plaintiff satisfies the first two elements of the *prima facie* case: she was fifty-five years old at the time of the March 2013 demotion and she met STPR's legitimate job expectations as an Assistant Underwriter. Defendant argues Plaintiff cannot establish either the third or fourth prong of the *prima facie* case.

The third prong of the *prima facie* case requires that Plaintiff show she suffered an adverse employment action. Cruz, 699 F.3d at 571. An adverse employment action may be either an actual or constructive discharge. De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir.

14

Civil No. 14-1534 (GAG)

2004) (citing Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002)).  To show that her March 2013 demotion was a constructive discharge, Plaintiff must show her working conditions were so unpleasant that a reasonable person in her position would have felt compelled to resign. De La Vega, 377 F.3d at 117.

Plaintiff cannot establish her March 2013 demotion was an adverse employment action. When Plaintiff was reassigned, she maintained the same salary and performed largely the same work.  (Docket Nos. 122-2 ¶¶ 55, 59-61; 144-1 ¶¶ 55, 59-61.)  Other than receiving a new job title, Plaintiff's duties only changed in two meaningful ways: (i) direct client contact was eliminated and (ii) she was reclassified from an exempt to non-exempt employee.  (Docket Nos. 122-2 ¶¶ 61, 63; 144-1 ¶¶ 61, 63.)  The loss of client contact is not enough to show constructive discharge.  See Velazquez Fernandez v. NCE Foods, Inc., 405 F. Supp. 2d 179, 192 (D.P.R. 2005) aff'd sub nom. Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6 (1st Cir. 2007) (plaintiff could not establish the prima facie element of adverse employment action under the ADEA when plaintiff's reassignment eliminated all client contact).  Moreover, her reclassification as a non-exempt employee was not an adverse action.  See Moreno-Rivera v. DHL Global Forwarding, 762 F. Supp. 2d 397, 406-07 (D.P.R. 2011) (where reclassification from exempt to non-exempt employee was not an adverse action for a retaliation claim).  Therefore, the terms of Plaintiff's 2013 demotion to a Policy Specialist did not affect or alter her conditions of employment.  Accordingly, Plaintiff cannot show the 2013 demotion was an adverse employment action.

For the sake of completeness, the Court addresses the fourth prong of the prima facie case. This final prong asks whether the employer later filled the employee's position, thereby demonstrating a continuing need for those services.  Bonefont-Igaravidez, 659 F.3d at 124. Defendants argue STPR had no continuing need for the Assistant Underwriter position.  However,

**Civil No. 14-1534 (GAG)**

Plaintiff's main responsibility, as both an Assistant Underwriter and a Policy Specialist, was to assist STPR's underwriters in preparing policies. (Docket No. 122-2 ¶ 61.)  Though Plaintiff's job title changed, her responsibilities did not.  Therefore, by transferring Plaintiff to the Policy Specialist position, STPR demonstrated its continuing need for Plaintiff's services.

Stage two of the burden-shifting framework requires the employer "to articulate a legitimate, nondiscriminatory basis for the termination."  Cruz, 699 F.3d at 571.  Defendants clear this hurdle easily.  STPR's legitimate business reason for reassigning Plaintiff as a Policy Specialist was to increase efficiency by establishing a more streamlined process for receiving policy requests and issuing policies.  (Docket Nos. 122-2 ¶ 30, 36; 144-1 ¶ 30, 36.)

In the final stage of the burden-shifting framework, Plaintiff must put forth sufficient evidence for a reasonable fact-finder to conclude the employer's justification was mere pretext and the true motive was age discrimination.  Meléndez, 622 F.3d at 52 (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)).  Even if Plaintiff had established a *prima facie* case of age discrimination arising from her March 2013 demotion, Plaintiff's claim nevertheless fails because she cannot show the Policy Specialist reassignment was the result of STPR's age-based animus.

Plaintiff does not point to a single statement relating to age.  (Docket Nos. 122-2 ¶ 117; 144-1 ¶ 101.)  Instead, Plaintiff attempts to show pretext by Lessack's discussion of cleaning house at STPR.  As Plaintiff recalls, Lessack said: "the office was like a house and when you do a cleanup of that house, you take all the furniture out, you clean, you fix, you paint the house, and then you bring back into the house what works." (Docket Nos. 122-2 ¶ 121; 144-1 ¶ 101.)  On its face, Lessack's comment has everything to do with Defendants' legitimate business plan to increase efficiency, and nothing to do with discrimination on the basis of age.  At worst, Lessack's

16

**Civil No. 14-1534 (GAG)**

comment is ambiguous, which is insufficient to show discriminatory intent.  See Gonzalez, 304 F.3d at 69-70 (where repeated ambiguous remarks by multiple parties did not show any discriminatory intent); Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) (finding a statement regarding plaintiff's age ambiguous, and therefore insufficient to prove employer's discriminatory intent).  No reasonable fact finder could conclude that Lessack's comment about cleaning house was actually a comment revealing Defendants' age-based discriminatory animus.

A reasonable fact-finder could not conclude Plaintiff established the *prima facie* case for age discrimination arising from her 2013 demotion. And even if Plaintiff had established the *prima facie* case, the record does not reflect sufficient evidence for a reasonable fact-finder to conclude the true motivation for Plaintiff's 2013 demotion was discrimination on the basis of age.

### 2.  October 2013 Termination

Plaintiff also claims ADEA age discrimination arising from her October 2013 termination. Once again, we apply the McDonnell Douglas burden-shifting framework.  Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The parties agree the first three *prima facie* prongs are satisfied: (i) Plaintiff was over forty (40) years old; (ii) she met STPR's job expectations as a Policy Specialist; and (iii) she suffered an adverse employment action when she was terminated on October 7, 2013.  The parties dispute whether Plaintiff has satisfied the fourth prong of the *prima facie* case.

Generally, the fourth prong is met when the employer sought a younger replacement with similar qualifications.  Mesnick, 950 F.2d at 823.  However, a reduction in force, by definition, seeks to reduce the overall size of the employer's workforce and may not involve the hiring of replacements.  Accordingly, the fourth prong of the *prima facie* case is modified in the context of a

17

Civil No. 14-1534 (GAG)

reduction in force, where a plaintiff must show either (i) younger persons were retained in the same position, or alternatively, (ii) the employer otherwise did not treat age neutrally.  Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004) (citations omitted); see also Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997); Mercado v. Cooperativa de Seguros de Vida de P.R., 726 F. Supp. 2d 96, 102 (D.P.R. 2010).

In this case, no younger person was retained in Plaintiff's position.  Rather, Plaintiff's employment position as a Policy Specialist was eliminated altogether.  (Docket Nos. 122-2 ¶ 97; 144-1 ¶ 90.)  Two former Policy Specialists—Ms. Rodriguez and Mr. Rodriguez—were retained at STPR following the October 2013 RIF, albeit in new roles.  Ms. Rodriguez was retained and reassigned because, unlike Plaintiff, she had a license from the Puerto Rico Insurance Commissioner allowing her to sell insurance.  (Docket Nos. 122-2 ¶¶ 106, 107; 144-1 ¶ 93, 94.)  Ms. Rodriguez was fifty-six (56) at the time.  (Docket Nos. 122-2 ¶ 109; 144-1 ¶ 95.)   Mr. Rodriguez was retained and reassigned to his previously held business development position.  (Docket Nos. 122-2 ¶ 108; 144-1 ¶ 94.)  Mr. Rodriguez was fifty (50) at the time.  (Docket Nos. 122-2 ¶ 109; 144-1 ¶ 95.)   The undisputed facts show these two employees were retained in different positions based on their additional qualifications.  (Docket No. 122-2 ¶¶ 106, 108; 144-1 ¶¶ 93, 94.)  Furthermore, Ms. Rodriguez and Mr. Rodriguez—ages fifty six (56) and fifty (50), respectively—were not substantially younger than Plaintiff, who was fifty-six (56) at the time of the October 2013 RIF.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger"); see also Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000) (a three-year difference between plaintiff and replacement was too insignificant to

Civil No. 14-1534 (GAG)

support *prima facie* age discrimination).  Therefore, Plaintiff has not presented sufficient evidence that younger persons were retained in the same position.

Accordingly, to satisfy the fourth prong of the *prima facie* case, Plaintiff must show some evidence the October 2013 RIF was not age neutral.  In the context of a reduction in force, lack of age neutrality may be shown by either (i) a facially discriminatory policy or (ii) a policy that is facially age-neutral but "has the effect of discriminating against older persons."  Phair v. New Page Corp., 708 F. Supp. 2d 57, 65 (1st Cir. 2010) (quoting Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 27 (1st Cir. 1998)).  Statistical evidence that a reduction in force disproportionately affected older employees can show a lack of neutrality.  Brennan, 150 F.3d at 28.

The undisputed factual record shows the October 2013 RIF was age neutral both facially and as applied.  Defendants did not use age as a factor in making termination decisions as part of the October 2013 RIF.  (Docket Nos. 122-2 ¶ 100; 144-1 ¶ 91.)  Before the October 2013 RIF, sixty-one percent of STPR's employees were over the age of forty (40).  (Docket Nos. 122-2 ¶ 101; 144-1 ¶ 91.)  After the implementation of the October 2013 RIF, sixty-four percent of STPR's remaining employees were over forty (40).  (Docket Nos. 122-2 ¶ 102; 144-1 ¶ 92.)  As applied to Policy Specialists, Plaintiff (age fifty-six) and Ms. Figueroa (age forty-five) were terminated, while Ms. Rodriguez (age fifty-six) and Mr. Rodriguez (age fifty) were assigned to new roles.  (Docket Nos. 122-2 ¶¶ 106-109; 144-1 ¶¶ 93-95.)  Viewing the evidence in the light most favorable to Plaintiff, the October 2013 RIF was both neutral on its face and as applied to Plaintiff.

In conclusion, the record demonstrates no evidence from which a reasonable jury could find the fourth prong of the *prima facie* case satisfied as to Plaintiff's 2013 termination.  Defendants did not retain a younger person in Plaintiff's position.  Additionally, the October 2013 RIF was age neutral both facially and as applied to Plaintiff.

19

Civil No. 14-1534 (GAG)

At stage two of the burden-shifting framework, the employer must "articulate a legitimate, nondiscriminatory basis for the termination." Cruz, 699 F.3d at 571.  Employers are "free to terminate an employee for any nondiscriminatory reason." Palacios v. FirstBank P.R., No. 11-1420 (GAG), 2012 WL 3837443, at *6 (D.P.R. Sept. 4, 2012) (citing Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005)).  In this case, Defendants have set forth evidence Plaintiff was terminated because Quezada determined the Policy Specialist position was expendable, and those duties were reassigned to other areas.  (Docket Nos. 122-2 ¶ 97; 144-1 ¶ 90.)

Once again, we return to the final stage of the burden-shifting framework, where a plaintiff must set forth sufficient evidence for a reasonable fact-finder to conclude the employer's justification was mere pretext and the employer's true motive was age discrimination. Meléndez, 622 F.3d at 52 (citing Feliciano de la Cruz, 218 F.3d at 6).  Ultimately, plaintiff's burden is to show the *but-for* cause of her termination was age. Velez, 585 F.3d at 448.  Plaintiff's evidence of pretext falls into three categories: (i) less senior employees were retained following the October 2013 RIF; (ii) the entire October 2013 RIF was unjustified; and (iii) Lessack's statement about "cleaning house" at STPR.  (See Docket Nos. 122-2 ¶¶ 124, 134, 145; 144-1 ¶¶ 108, 118, 128.)

First, Plaintiff argues STPR's retention of employees with less seniority demonstrates her termination was the result of age-based discrimination.  Plaintiff's seniority argument misunderstands the ADEA's age discrimination prohibition.  The "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." Mesnick, 950 F.2d at 825.  Plaintiff may well have been the best, most senior Policy Specialist at STPR (though Defendants present evidence to the contrary).  Nevertheless, it does not follow that Plaintiff was terminated due to her

Civil No. 14-1534 (GAG)

age, especially when Ms. Rodriguez (fifty-six years old) and Mr. Rodriguez (fifty years old) were retained in other capacities, while Ms. Figueroa (forty-five years old) was terminated.

Plaintiff argues the October 2013 RIF was unjustified.  In Plaintiff's view, Defendants "alleged that [the October 2013 RIF] was for economic reorganization but that she did not believe that."  (Docket No. 144-1 ¶ 128.)  Plaintiff draws on evidence of bonuses and other signs of economic prosperity, none of which address the issue of pretext.  (See Docket Nos. 122-2 ¶¶ 154, 157-164; 144-1 ¶¶ 136, 139-142.)  Even if STPR's business were rock-solid, reorganization remains a non-discriminatory basis for terminating employees.  Plaintiff's evidence does not show the reason for Plaintiff's termination was *her age*.  See Hidalgo, 929 F. Supp. at 561 ("[f]inancial evidence suggesting that a decision, in hindsight, may not have been prudent is not evidence of improper motive; the ADEA is not violated by erroneous or even illogical business judgment.").

Plaintiff draws on Lessack's comment about "cleaning house" to show pretext.  As Plaintiff recalled, Lessack stated: "the office was like a house and when you do a cleanup of that house, you take all the furniture out, you clean, you fix, you paint the house, and then you bring back into the house what works."  (Docket Nos. 122-2 ¶ 121; 144-1 ¶ 101; see also 122-3 at 227.)  Lessack's comment was not explicitly related to an age in any way.  Even if it impliedly related to age, an isolated comment like Lessack's does not show discriminatory intent.  See Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st. Cir. 1996) ("[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent.")

Taken together and viewed in the light most favorable to Plaintiff, the record does not reveal sufficient evidence for a reasonable fact-finder to conclude Plaintiff satisfied the *prima facie* case for either her 2013 demotion claim or her 2013 termination claim.  Even so, a reasonable fact-finder could not conclude either the 2013 demotion or the 2013 termination were the result of

**Civil No. 14-1534 (GAG)**

Defendants' discriminatory age-based animus.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842-43 (1st Cir. 1993) (compiling cases requiring evidence of discriminatory animus to constitute a showing of pretext at summary judgment).

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's age discrimination claims under the ADEA.

B. ADEA: Hostile Work Environment Claim

The First Circuit has recognized hostile work environment claims as actionable under the ADEA.  Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008).  To succeed in an ADEA hostile work environment claim, a plaintiff must show: (1) she is a member of the class protected by the ADEA; (2) she was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) the behavior was both subjectively and objectively offensive, such that a reasonable person would find it hostile or abusive; (6) that the plaintiff found it hostile or abusive; and (7) some basis for employer liability has been established. See Gutierrez-Lines v. P.R. Elec. & Power Auth., 751 F. Supp. 2d 327, 341-42 (D.P.R. 2010) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

Hostile work environment claims are highly fact specific and not apt to mathematical precision.  Harris v. Forklift Sys. Inc., 510 U.S. 17, 22 (1993).  Courts examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Id. at 23.  "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not create a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore

22

Civil No. 14-1534 (GAG)

1   Servs., 523 U.S. 75, 82 (1998)).  At the summary judgment stage, "[t]he Court's function is one of

2   screening to determine whether, on particular facts, a reasonable jury could reach such a

3   conclusion."  Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir. 2005).

4        Plaintiff was not subjected to any explicitly ageist remarks during her twenty-four (24)

5   years at STPR.  (Docket Nos. 122-2 ¶ 117; 144-1 ¶ 101.)  Reasonable minds may differ about the

6   true intent behind Lessack's statement about "cleaning house" at STPR.  Regardless of the intent

7   attributed to Lessack's comment, the comment—on its face—was not sufficiently severe and

8   pervasive so as to alter the conditions of Plaintiff's work environment.  See Gutierrez-Lines, 751

9   F. Supp. 2d at 342 (finding repeated comments relating to plaintiff's age insufficient to meet the

10  required level of severity and pervasiveness).  Lessack's "cleaning house" comment is insufficient

11  to establish an ADEA hostile work environment claim.

12       Plaintiff also claims she was subject to harassment by Quezada based on a series of events

13  at work.  Specifically, Quezada (i) emailed Plaintiff about work duties; (ii) changed the office

14  locks without providing Plaintiff a key; and (iii) excluded Plaintiff from meetings. (Docket Nos.

15  122-2 ¶ 165; 144-1 ¶ 143.)  Additionally, Plaintiff recalls an instance in which she (erroneously)

16  thought she had been locked in the office.  Id.  However, Plaintiff fails to connect these events to

17  any harassing treatment relating to age.  See Gutierrez-Lines, 751 F. Supp. 2d at 342 (where

18  evidence of restricted phone access, additional assignments, exclusion from work events, and

19  sarcastic remarks bore no connection to plaintiff's age).  Instead, Plaintiff relies on her own

20  inferences to bridge the gap between these events and a hostile work environment claim.

21       Quezada's emails were sent to all four Policy Specialists, and generally contained either

22  work instructions or inquiries about Policy Specialist duties.  (Docket Nos. 122-2 ¶ 166; 144-1

23  ¶ 144.)  These emails derived from Quezada's role as Plaintiff's supervisor.  (Docket No. 122-2

24

**Civil No. 14-1534 (GAG)**

¶ 15; 144-1 ¶ 15.)  Plaintiff may not have appreciated Quezada's emails, but the record contains no evidence these emails caused any impediment to Plaintiff's performance of her work duties.  See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1st Cir. 2003) ("a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws.").

When Quezada changed the office locks, she provided the office key to two employees, but did not provide Plaintiff with a key.  (Docket Nos. 122-2 ¶¶ 169, 171, 172; 144-2 ¶¶ 146, 148.) Plaintiff only speculates as to why she did not receive a key.  This does not advance her hostile work environment claim.  See Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007) (drawing all reasonable inferences in favor of plaintiff at summary judgment does not include bald assertions or rank conjecture).

Quezada did not include Plaintiff in three (3) or four (4) meetings.  (Docket Nos. 122-2 ¶ 175; 144-1 ¶ 150.)  This type of exclusion, while perhaps inconsiderate, does not show discriminatory animus.  Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011); see also Zayas-Oriz v. Becton Dickinson Caribe, Ltd., 968 F. Supp. 2d 463, 474 (D.P.R. 2013).  Missed meetings are the type of "ordinary tribulations of the workplace" that do not constitute a hostile work environment.  Faragher, 524 U.S. at 788.

Finally, on one occasion, Quezada closed the office for the evening while Plaintiff was still at work, giving Plaintiff the momentary, though mistaken, impression she had been locked in the office.  (Docket Nos. 122-2 ¶¶ 180, 181; 144-1 ¶ 152.)  The record reflects no evidence Quezada knew Plaintiff was in the office, that Quezada's act was intentional, or that the reason for Quezada's act was Plaintiff's age.  Id.  This type of "unsupported speculation" is inadmissible at summary judgment.  Forestier Fradera, 440 F.3d at 21.

24

Civil No. 14-1534 (GAG)

Viewing the record as a whole in the light most favorable to Plaintiff, the events alleged do not rise to the level necessary to sustain Plaintiff's ADEA hostile work environment claim. Therefore, no reasonable fact-finder could find in Plaintiff's favor on this claim. The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's ADEA hostile work environment claim.

### C. Title VII: Retaliation Claim

Title VII prohibits workplace discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Additionally, the statute prohibits retaliation by an employer following an employee's opposition to discrimination on those bases. § 2000e-3(a).

A plaintiff may present direct or circumstantial evidence of an employer's retaliatory conduct. Absent direct evidence, courts employ the McDonnell Douglas burden-shifting framework to evaluate circumstantial evidence of retaliation. Collazo, 617 F.3d at 46 (citing McDonnell Douglas, 411 U.S. at 802-04). Plaintiff must set forth a *prima facie* case by showing: (i) she engaged in a protected activity; (ii) she suffered an adverse employment action; and (iii) the adverse employment action was causally connected to the protected activity. Collazo, 617 F.3d at 46. If plaintiff satisfies the *prima facie* case, then the burden of production shifts to the defendant to show a "legitimate, non-retaliatory reason" for the adverse employment action. Id. Then, plaintiff must show defendant's reason is mere pretext, and that the true cause of the adverse action was retaliatory animus. Id.

Plaintiff cannot establish either the first or the third prong of the *prima facie* case for Title VII retaliation. Plaintiff undertook no protected activity while employed at STPR. Plaintiff filed an EEOC complaint on October 15, 2013, over a week after her termination at STPR. (Docket Nos. 122-2 ¶ 113; 144-1 ¶ 97.) This was Plaintiff's first complaint relating to age discrimination

Civil No. 14-1534 (GAG)

or harassment against her employer.  (Docket Nos. 122-2 ¶ 112; 144-1 ¶ 97.)  Furthermore, gender was not a factor in either Plaintiff's 2013 demotion to Policy Specialist or Plaintiff's 2013 termination.  (Docket Nos. 122-2 ¶ 144; 144-1 ¶ 98.)

Even if Plaintiff's 2013 demotion or her 2013 termination constituted an adverse employment action, Plaintiff cannot show causation because she engaged in no protected activity before either of those events.  Plaintiff's EEOC complaint has no bearing on her Title VII claim because it was filed after her termination.  (Docket Nos. 122-2 ¶ 113; 144-1 ¶ 97.)  As such, establishing a causal connection proves temporally unworkable.  See Trainor v. HEI Hosp. Inc., 699 F.3d 19, 27 (1st Cir. 2012) (recognizing the "common-sense aspect" to retaliation causation which necessitates that the adverse action to the employee must post-date the employee's protected activity).

No reasonable factfinder could find that Plaintiff has established the *prima facie* case for Title VII retaliation.  Therefore, Defendants are entitled to judgment as a matter of law.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim.

D.  Section 1983 Claim

Plaintiff asserts a claim under 42 U.S.C. § 1983.  Section 1983 creates a cause of action for plaintiffs alleging a governmental violation of federally protected rights.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  The first step in analyzing any claim under § 1983 is whether the defendant acted under color of state law.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Plaintiff admits STPR was not associated with the government in any way.  (Docket Nos. 122-2 ¶ 116; 144-1 ¶ 100.)  Therefore, Plaintiff's § 1983 claim fails.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims pursuant to 42 U.S.C. § 1983.

26

Civil No. 14-1534 (GAG)

### E.   Puerto Rico State Law Claims

Plaintiff invokes this Court's supplemental jurisdiction and asserts Puerto Rico state law claims under Law 115, Law 100, Law 80, Law 379, Articles 1802 and 1803, and Article II of the Puerto Rico Constitution.  (Docket No. 21 ¶¶ 2, 7, 15.)  Defendants argue Plaintiff's Puerto Rico state law claims should be dismissed with prejudice, or in the alternative, the Court should decline jurisdiction over the supplemental claims.  (Docket No. 122-1 at 33-34.)

Generally, dismissal of a plaintiff's federal claims well before trial will trigger the dismissal without prejudice of any supplemental state law claims.  Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  However, in certain situations, a federal court may retain jurisdiction over state law claims even after dismissal of all federal claims.  Id.  The exercise of supplemental jurisdiction is "wholly discretionary" and determined on a case-by-case basis, with due consideration to factors such as judicial economy, convenience, fairness, and comity.  Id.

In this case, interests of judicial economy, convenience, and fairness pull the Court towards retaining jurisdiction.  The factual record has been fully developed, discovery has closed, the federal and state claims arise from the same common nucleus of operative fact, and Plaintiff has elected to litigate in the federal forum.  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996) (affirming the district court's discretionary decision to retain jurisdiction over supplemental state law claims for similar reasons).  For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment as all Puerto Rico state law claims.

### 1.   Law 115

To allege retaliation under Law 115, plaintiff must have been retaliated against by her employer.  P.R. LAWS ANN. tit. 29, § 194(a).  In this case, Plaintiff did not participate in any protected conduct before her dismissal.  (Docket Nos. 122-2 ¶ 112; 144-1 ¶ 97.)  Plaintiff's

allegations cannot sustain a claim for retaliation under Law 115.  See González v. Schneider Elec. Bldgs. Americas, Inc., No. 10-1876 (GAG), 2011 WL 1311742, at *5 (D.P.R. Apr. 4, 2011) (granting defendant's motion to dismiss plaintiff's Law 115 claim for lack of protected conduct pre-dating any adverse employment action).  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim under Law 115.

### 2. Law 100

Law 100 is Puerto Rico's anti-discrimination statute.  The statute imposes civil liability on an employer who discharges or discriminates against an employee on the basis of age, race, gender, and religion, among other things.  P.R. LAWS ANN. tit. 29, §§ 146-151 *et seq*.  "[O]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007).  "As applied to age discrimination, [Law 100] differs from the ADEA only with respect to how the burden-shifting framework operates."  Id.

As discussed above, there is insufficient evidence for a reasonable fact-finder to uncover any genuine issue of material fact relating to Plaintiff's age discrimination claim.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 100 claim.

### 3. Law 80

Law 80 requires employers to provide compensation for at-will employees who are discharged without good cause.  P.R. LAWS ANN. tit. 29, § 185a; Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013).  The employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal.  Hoyos v. Telecorp Commc'n, Inc., 405 F. Supp. 2d 199, 205-06 (D.P.R. 2005) (internal quotations omitted).  Then, the employer must show, by a preponderance of the evidence, the dismissal was made for good cause.  Id.  Under the statute,

Civil No. 14-1534 (GAG)

good cause includes "[r]eductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge." § 185b(f).

Defendants eliminated the Policy Specialist position due to the decreased volume of policy requests at STPR. (Docket Nos. 122-2 ¶ 95; 144-1 ¶ 88.) As a result, two Policy Specialists were terminated, and two others were reassigned to different positions at STPR. (Docket Nos. 122-2 ¶¶ 104-08; 144-1 ¶¶ 93, 94.) Plaintiff argues STPR's financial condition did not justify her termination. (Docket No. 144-1 ¶ 84.) Even so, the undisputed facts show STPR's "anticipated . . . volume of production . . . at the time of the discharge" led Defendants to believe Plaintiff's termination was necessary. § 185b(f). Accordingly, Defendants have satisfied the requirements of good cause under Law 80. See id.; see also Franco-Santos v. Goldstar Transp., Inc., No. 09-1989 (GAG), 2011 WL 570280, at *6 (D.P.R. Feb. 17, 2011) (dismissing plaintiff's Law 80 claim at summary judgment following dismissal of plaintiff's federal law claims). Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 80 claim.

4. Law 379

Law 379 regulates working hours, days, overtime calculations, and compensation. P.R. LAWS ANN. tit. 29, §§ 271-288 *et seq.* Plaintiff admits she is not entitled to any payments for time worked at STPR under Law 379. (Docket Nos. 122-2 ¶ 115; 144-1 ¶ 99.) Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 379 claim.

5. Articles 1802 and 1803

A plaintiff may bring an additional claim for tortious or negligent conduct under Articles 1802 and 1803 only if the conduct is distinct from the conduct covered by the specific labor law. Santini Rivera v. Serv. Air Inc., 137 P.R. Dec. 1 (P.R. 1994).

29

Civil No. 14-1534 (GAG)

Here, Plaintiff has not set forth independent grounds for a tort claim.  As such, Plaintiff is barred from bringing a claim under Articles 1802 and 1803 because the conduct Plaintiff alleges is based on the same facts that give rise to Plaintiff's causes of action under Puerto Rico's anti-discrimination statute.  Reyes-Ortiz v. McConnell Valdes, 714 F. Supp. 2d 234, 239 (D.P.R. 2010); see also Blasco Figueroa v. P.R. Aqueducts & Sewer Auth., No. 14-1395 (GAG), 2016 WL 1122003, at *8 (D.P.R. Mar. 22, 2016) (finding plaintiff's disability claims non-cognizable under Articles 1802 and 1803 because those claims arose from the same facts as plaintiff's ADA and Law 44 claims).  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim under Articles 1802 and 1803.

### 6.  Puerto Rico Constitution

In her complaint, Plaintiff makes reference to Article II, §§ 1, 4, 6, 7, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico.  (See Docket No. 21 ¶¶ 7, 15.)  Additionally, Plaintiff's fifth cause of action includes an allegation of age discrimination in violation of "the Constitution of the Commonwealth of Puerto Rico as well as other state laws regarding damages." (Docket No. 21 ¶¶ 89-90.)  Neither party has addressed the merits of Plaintiff's claims arising under the Puerto Rico Constitution.

"A party may not simply throw a statutory reference into a complaint hoping to later flesh out its claim with facts in support."  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 88 (1st Cir. 2008).  Yet, that is precisely what Plaintiff has done.  Plaintiff has failed to meet even the most basic pleading requirements for any claim under the Puerto Rico Constitution.  See id. at 87-88 (affirming the district court's decision not to address plaintiff's passing statutory reference to Puerto Rico state law claims when plaintiff did not assert the viability of those claims in opposition to summary judgment); Colón-Fontánez, 660 F.3d at 46 (finding no error in a district court's

30

Civil No. 14-1534 (GAG)

determination not to consider an "entirely unarticulated" claim).  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims arising under Article II of the Constitution of the Commonwealth of Puerto Rico.

**V.     Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment at Docket No. 122 is **GRANTED.**  Plaintiff's claims are hereby **DISMISSED with prejudice**.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 19th day of September, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge